CHARLOTTE MARKS, administratrix, *vs.* HOPE MUTUAL LIFE INSURANCE COMPANY.

Suffolk. March 19. — May 8, 1875.   AMES & ENDICOTT, JJ., absent.

The general agent of an insurance company gave a receipt to A. acknowledging the receipt of a certain sum and agreeing, if the application was approved by the company, to furnish a policy to A. from the company within thirty days' time, "or if the application is declined, to return the above amount to him or his order, on demand and return of this receipt; it being expressly understood and agreed that no liability is assumed by the company, unless the said risk is approved and a policy issued at the home office." In an action on this receipt by the administrator of A., it appeared that the application was approved by the company and a policy sent to the agent, within thirty days ; but before delivery A. died and the agent returned the policy to the company. *Held,* that the receipt did not operate as a present insurance for thirty days or until a policy should be furnished.

CONTRACT brought by the plaintiff as administratrix of the estate of Joseph Marks.   The declaration contained two counts. The first count set forth a policy of insurance said to have been issued by the defendant corporation on the life of said Joseph, and declared for the amount of the policy.   The second count set forth a receipt, a copy of which was annexed, and averred a non-fulfilment of the agreement therein contained on the part of the defendant corporation.   The receipt annexed was as follows :

"Boston, January 10, 1870.   Received from Joseph Marks, ten and fifty one hundredths dollars, for which (provided the application is approved at the home office) I agree to furnish him a fifteen years' endowment policy upon his life, for five thousand (5000) dollars, from the Hope Mutual Life Insurance Co. of New York, within thirty days from date, or if the application is declined, to return the above amount to him or his order, on demand and return of this receipt.   It being expressly understood and agreed that no liability is assumed by the company, unless

the said risk is approved and a policy issued at the home office in New York.    James Simpson, General Agent."

Trial in the Superior Court before *Pitman*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff was called as a witness and testified that she was the widow of Joseph Marks, who died in Boston, on January 16, 1871 ; that about a week after his death she found the receipt declared on in his pocket-book.    She was also permitted to testify against the objection of the defendant, who excepted to the admission of the testimony, that within a month after she found the receipt she met James Simpson, who signed said paper, and asked him whether he was prepared to receive the money ; saying she was prepared to receive the policy.    He said he was not prepared to deliver the policy ; that the company had seen Mr. Marks's death in the paper, and demanded the policy, and he had returned the policy back to the company ; that she offered him the money at the time, and he would not take it.

James Simpson testified for the plaintiff that he was general agent of the defendant corporation, and produced his contract with the company ; that he signed the receipt declared on ; that he saw Joseph Marks sign the application for insurance ; that Marks was examined by the physician of the defendant corporation ; that on January 10 the witness told Marks he had better make a deposit in order to secure it in case anything should happen, and Marks paid the witness ten dollars and a half, and the witness gave him the receipt.    The testimony in regard to the payment and the giving the receipt was objected to by the defendant, but the objection was overruled, and the defendant excepted.    The witness testified further that some few days after he received the money from Marks he received the policy from one Fletcher, the general manager of the defendant company for Massachusetts ; that he called at Marks's place of business for the purpose of receiving the remainder of the premium, but did not find Marks in, and never saw him alive after he received it ; and that no one ever called upon him for the policy, and he never tendered it to any one ; that he was directed to return the policy, which he did, to Fletcher ; that he afterwards, and within four weeks from the death, met Mrs. Marks, and that the interview took place substantially as testified to by her ; that he

did not have the policy when he saw the plaintiff, but had returned it to the office. The witness was then asked, " Had you any other or further instructions from Mr. Fletcher, as agent of the company, than are contained in that paper, your contract with the company ? " The defendant objected, the judge overruled the objection, and the witness answered this and other questions substantially as follows : " When I commenced business for this company, I received a book containing blank forms, perhaps a hundred like this receipt, and was told to take a deposit, when I could get it, from any man I received an application from. I was instructed to get any amount I could, from one dollar up to the premiums, and to make use of the receipts. Fletcher always instructed me that this was a binding receipt, and that if a person made a payment, and he was accepted, I was to consider myself, and instruct him, that he was insured for thirty days." On cross-examination the witness testified that he had never paid over the ten and one half dollars, which he had received from Marks, to the company ; that, so far as he knew, the defendant corporation had never received anything for or on account of the policy ; that he kept the money that Marks paid him, and that when he returned the policy the company had no right to the money. This was admitted against the plaintiff's objection.

Fletcher was called by the plaintiff, and testified that he was the general manager of the defendant corporation in 1870 and 1871 for Massachusetts ; that the contract with Simpson was made by his direction, and sent to New York for the president's signature ; that the general agents were under him ; that the policy was issued by the defendant corporation through his agency, and upon the application made by Marks ; that he probably received it on January 12, the date on which he countersigned it ; that he delivered the policy to Simpson ; that he had no knowledge of the receipt until it came out in the course of the litigation ; that the receipt was known in insurance phrase as " a binding receipt." The witness was asked, " Now, what instructions, if any, did you give Simpson in relation to his duties as general agent of the company, beyond what are expressed in his contract with the company ? " To this the defendant objected, and the judge overruled the objection, and the witness

answered. " I told him, in getting an application, to always get, in all cases, all the money that he could; to get certainly, if he could, enough to cover the expenses of a medical examination, and the policy fee, and the stamps, and to give a binding receipt for that." He further testified, under objection of the defendant, that he furnished the general agents a paper covered book containing blank forms of receipts similar to the receipt declared on, each receipt having a stub like those taken from a check book; that he was instructed by the president of the company to get all the money he could from parties when they made their applications, and to so instruct his agents; that the matter of giving receipts was talked over between himself and the president, and was known to him. The defendant admitted that it kept an account with its agents of all policies issued; that Fletcher, in the ordinary course of business, would be charged with the number and amount of the policy issued to Marks and Simpson, and that when the policy was returned the charge was cancelled.

The defendant objected to the admission of the receipt, but the judge overruled the objection.

Upon this evidence the defendant asked the judge to instruct the jury that the plaintiff could not recover under her first count, and the judge so ruled. The defendant also asked the judge to instruct the jury that the receipt could not be construed as a waiver of the condition of payment specified in the application; that the application and receipt were to be construed together as one agreement; that if the receipt was binding upon the company, its terms had been complied with, and that upon the whole evidence the plaintiff could not recover under the second count. But the judge ruled otherwise, and instructed the jury that the plaintiff might recover under the second count, and that the measure of damages would be $5000 and interest. The jury returned a verdict for the plaintiff for $5180; and the defendant alleged exceptions.

*E. Avery & G. M. Hobbs*, for the defendant.

*J. O. Teele*, for the plaintiff.

WELLS, J. Under the ruling at the trial, the verdict must rest exclusively upon the written memorandum declared on as the contract of the defendant corporation.

Assuming that the corporation could contract to insure other-wise than by a policy in the usual form and payment of the premium, and that Simpson had full authority so to contract, and also that this writing was intended to bind the corporation and not Simpson personally, we are unable to give to the writing any effect except as an agreement to return the money received unless a policy should be issued and furnished to the plaintiff within thirty days.

It cannot operate as a present insurance for thirty days, or until a policy should be furnished, because that is not its purport. And if such a contract could be made out by proof of oral agreements and representations, adding to and varying the written memorandum, it would be a different contract from that declared on. It is not an absolute agreement to insure, or to make and deliver a policy. Its obligation would be satisfied at any time by declining the application and returning the money received. Reading the writing as if made and signed by the corporation itself, it disclaims the assumption of any liability by way of insurance otherwise than by a policy duly issued to the party applying.

We are of opinion that the ruling which allowed the action to be maintained was wrong, and that the verdict must be set aside.                          *Exceptions sustained.*